IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-24-KS

| | | |
|---|---|---|
| MICHAEL ANTONIO CHRISTIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Michael Antonio Christian ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the issues, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the court grants Plaintiff's Motion for Judgment on the Pleadings [DE #12], denies Defendant's Motion for Judgment on the Pleadings [DE #15], and remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB on December 4, 2018, with an alleged onset date of May 8, 2018.[1] (R. 16, 165–71.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 16, 66, 82, 104–05.) A telephonic hearing was held on April 26, 2021, before Administrative Law Judge ("ALJ") Rebecca Adams, who issued an unfavorable ruling on June 14, 2021. (R. 12–54.) On December 13, 2021, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On February 10, 2022, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405.

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v.*

---

[1] Plaintiff amended his alleged onset date from May 8, 2018, to March 15, 2020, through counsel. (R. 282.)

*Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other

3

work exists in the national economy that the claimant can perform. *Id*. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2025. (R. 18.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of March 15, 2020. (R. 19.) Next, the ALJ determined Plaintiff had the severe impairments of degenerative disc disease, diabetes mellitus type II, atrial fibrillation, Graves' disease, obstructive sleep apnea, obesity, and post-traumatic stress disorder (PTSD). (*Id.*)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 19.) The ALJ expressly considered Listings 1.15, 1.16, 3.09, 4.02, 4.05, 9.00 (in conjunction with

SSR 14–2p), 12.02, and 12.15. (R. 19–21.) The ALJ also considered Plaintiff's thyroid-related disorders under several listing categories. (R. 20–21.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except for the following additional limitations: [Plaintiff] can occasionally climb vertical ladders that are up to four feet in height, but none that are higher; and cannot climb ropes or scaffolding. [Plaintiff] can frequently climb ramps or stairs, stoop, kneel and crouch, and occasionally crawl. [Plaintiff] must avoid concentrated exposure [to] extreme heat and to workplace hazards, such as unprotected heights and open flames. [Plaintiff] can understand, remember and carry out instructions for simple routine tasks that are not at a production pace (i.e. not subject to strict time deadlines and/or quota requirements). [Plaintiff] has the ability to maintain concentration, persistence and pace for two-hour segments for completion of simple routine tasks (assuming normal fifteen-minute morning and afternoon breaks and a thirty-minute lunch break). [Plaintiff] has the ability to interact frequently with supervisors, and occasionally and [on a] casual basis with coworkers and the public. [Plaintiff] has the ability to adapt to workplace changes involving simple work-related decisions.

(R. 22–23.) In making this assessment, the ALJ stated that she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. § 404.1529 and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 23–24.) At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (R. 25.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant

5

numbers in the national economy that Plaintiff can perform, namely: linen room attendant (DOT #222.387-030), dining room attendant (DOT #311.677-018), and counter supply worker (DOT #319.687-010). (R. 26.) The ALJ concluded Plaintiff has not been disabled under the Act during the period from his alleged onset date through the date of the decision. (R. 27.)

IV. Plaintiff's Argument

Plaintiff argues the ALJ erred by failing to sufficiently explain how she evaluated the medical opinion of Debra Barton, NP. (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #12-1] at 1, 9–13.) In contrast, the Commissioner contends the ALJ provided sufficient explanation as to the weight assigned to this medical opinion so as to comply with the applicable regulations and enable meaningful review. (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #16] at 5–9.)

When evaluating medical opinions, the ALJ must consider factors set forth in 20 C.F.R. § 404.1520c(b), (c)(1)–(5). "The ALJ is not required to explain how she considered each of the relevant factors; instead, when articulating her finding about whether an opinion is persuasive, the ALJ need only explain how she considered 'the most important factors' of supportability and consistency." *Corbin v. Kijakazi*, No. 2:20-CV-60-M, 2022 WL 990487, at *2 (E.D.N.C. Mar. 31, 2022). Generally, the ALJ must explain how the evidence led to her conclusions. *Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020) ("To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." (quoting *Monroe v. Colvin*, 826 F.3d

6

176, 189 (4th Cir. 2016))); *see also Mascio*, 780 F.3d at 637 (remand is necessary when a reviewing court is "left to guess about how the ALJ arrived at his conclusions").

ALJ Adams stated the following about the medical opinions of Department of Veterans Affairs (VA) nurse practitioner Debra Barton:

> A primary care nurse from the [VA], Debra Barton, NP, opined that [Plaintiff] should not be in a position that requires walking longer distances or climbing stairs and ladders and that he should not have to stoop and squat, which she supported with the results of her examination (Ex. 2F/206-215 [R. 568–77]). However, her opinion is not consistent with the longitudinal medical record, which indicated that [Plaintiff] ambulated within normal limits and that his gait was within normal limits (Exs. 4F/59 [R. 872], 6F/13 [R. 926], 6F/46 [R. 959]). Therefore, the undersigned does not find Nurse Barton's opinion persuasive.

(R. 25.) Some preliminary, clarifying points about the ALJ's explanation are needed before explaining why the ALJ's evaluation of Ms. Barton's medical opinion evidence is insufficient.

Two of the pieces of evidence ALJ Adams cites—R. 926 and R. 959—are the same. These are both excerpts of notes from a December 20, 2019, neurosurgery consultation with Rowena Mariano, M.D., of the VA. (*Compare* R. 924–27 *with* R. 957–59.) The only difference is that one set of treatment notes is labeled "Progress Notes" and the other "Consult Requests." (*Id.*) The remaining piece of evidence is a note from a February 4, 2019, physical therapy consultation with J. Russell Edwards of the VA. (R. 872–74.)

ALJ Adams' explanation of the most important factors of supportability and consistency is lacking for the following reasons. First, the ALJ's explanation gives no indication that she discredited the nurse practitioner's opinion due to insufficient

7

supportability. So, the only factor that cut against the opinion was consistency. But it is not clear how ambulation/gait within normal limits during the PT and neurosurgery consults is inconsistent with Ms. Barton's opinion that Plaintiff is not able to walk longer distances, climb stairs, or stoop and squat. As explained by Ms. Barton, Plaintiff's abnormal range of motion in his knees affects his ability to climb and descend stairs. (R. 569.) Third, selecting two 2019 consultation notes from a fairly voluminous medical record cannot reasonably be said to describe "longitudinal" medical evidence. *See* Longitudinal, Merriam-Webster's Collegiate Dictionary 734 (11th ed. 2003) ("involving the repeated observation or examination of a set of subjects over time with respect to one or more study variables"). Fourth, the physical therapy note from February 2019 identifies as a goal for Plaintiff to be "able to stand stationary for 30-60-mins duration w/o [lower back pain] greater than 3/10 by 8-12-wks," which may actually support and be consistent with Ms. Barton's opinions about Plaintiff's ability to walk for longer distances. (R. 874.) Given the ALJ's endorsement of Ms. Barton's opinions as to the supportability factor and the aforementioned problems with the ALJ's explanation of the consistency factor, the undersigned cannot meaningfully review whether ALJ Adams properly evaluated the medical opinions of nurse practitioner Barton. *See* Arakas, 983 F.3d at 95; Mascio, 780 F.3d at 637; SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) (ALJ must "explain how any material inconsistencies or ambiguities in the evidence were considered and resolved"). Accordingly, remand is necessary.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings [DE #12] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #15] is DENIED, and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

This 22nd day of May 2023.

_____
KIMBERLY A. SWANK
United States Magistrate Judge